EN BANC

PARKER, Chief Judge.
The Public Defender for the Tenth Judicial Circuit (appellate public defender) has filed a certification of conflict and motion to withdraw, due to what it deems to be an “excessive case load,” as appointed counsel in 248 cases to which that office is currently assigned. Section 27.51(4)(b), Florida Statutes (1995), requires the Public Defender of the Tenth Judicial Circuit to act as the appellate attorney for indigent defendants appealing criminal matters from the trial courts to this court. For the reasons set forth in this order, we deny the motion.
In September 1997, this court entered a preliminary order in Rodriquez v. State, 700 So.2d 79 (Fla. 2d DCA 1997). That order outlined the inability of the Office of the Public Defender of the Tenth Judicial Circuit to comply with the time requirements set forth in the Florida Rules of Appellate Procedure. The order also pointed out the following facts:
1. As of June 30, 1997, the appellate public defender’s delinquent cases have reached 751 cases;
2. As of July 25, 1997, the appellate public defender has an additional 125 pending cases;
3. The output of briefs, at current levels, from the appellate public defender’s office, measured against the new appellate cases to which that office is appointed, will result in at least 25 additional cases falling delinquent every month, or 300 new delinquent cases per year, added to a staggering number of delinquent cases now approaching 800 cases; and
4. These delinquency numbers have continued to increase even though this court, on its own motion, removed the appellate public defender from 200 cases in Septem *2 ber 1996, 100 cases in March 1997, and 100 cases in May 1997.
The supreme court has recognized that indigent appellants must have the same ability to obtain meaningful appellate review as wealthy appellants. See In re Order on Prosecution of Criminal Appeals by Tenth Judicial Circuit Public Defender, 561 So.2d 1130 (Fla.1990). At the same time, the supreme court has made it clear that this court should not “micromanage” the affairs of the appellate public defender’s office by advising that office on how to conduct its affairs. See In re Certification of Conflict in Motions to Withdraw Filed by Public Defender of Tenth Judicial Circuit, 636 So.2d 18 (Fla.1994).[1]
As a result, this court is left with: hundreds of delinquent cases involving indigent defendants who are not receiving timely appellate review; an appellate public defender’s office whose current production of briefs demonstrates an inability to decrease the delinquency; and a supreme court prohibition against any attempts by this court to direct the appellate public defender’s office to increase the quantity of work produced by that office. Presently, this court is reviewing cases in which the defendants have served their prison sentences or have completed their probation before the appellate public defender’s office has filed its briefs with this court. Based upon the foregoing, it is
ORDERED that, commencing on May 1,1998, and until further order of this court, the Public Defender of the Tenth Judicial Circuit shall accept no further appellate cases over which this court has jurisdiction. By the fifth of every month, beginning June 1998, the Public Defender of the Tenth Judicial Circuit shall provide this court with a list of cases that have been assigned to that office which are on appeal to this court, and in which that office has not filed appellate briefs. It is further
ORDERED that, as of May 1, 1998, all indigent defendants who appeal their cases to this court from the Sixth, Tenth, Twelfth, Thirteenth, and Twentieth Circuits shall obtain appointed counsel through the following procedures:
1. The trial court shall direct that the attorney representing the indigent defendant in the trial court shall remain on the case until the appellate record is prepared;
2. Upon filing of the notice of appeal in a case over which this court has jurisdiction, if the indigent defendant would otherwise have been entitled to the services of the Public Defender of the Tenth Judicial Circuit, the trial attorney shall notify the chief judge of that circuit that the appeal has been filed and that an appellate attorney must be appointed to represent the indigent defendant;
3. If the chief judge is satisfied that the defendant is indigent and would otherwise be entitled to the appellate services of the Public Defender of the Tenth Judicial Circuit, the chief judge shall appoint a qualified attorney who is not an attorney in the Office of the Public Defender of the Tenth Judicial Circuit to represent the indigent defendant in the appeal no later than forty days after the filing of the notice of appeal; and
4. The attorney appointed by the chief judge shall file a notice of appearance with this court and, thereafter, timely process the appeal.
*3 This court is mindful that this order may put an enormous burden on the individual counties to pay appellate attorneys for indigent criminal defendants. The county attorney from Pinellas County filed a response to the appellate public defender’s motion to withdraw, which was adopted by several other counties. That response stated: (1) the county attorney is uncertain that inadequate state funding is the sole cause of the public defender’s backlog; (2) the county attorney has spoken with the Clerks of Court for the First, Third, Fourth, and Fifth District Courts of Appeal and each clerk advised that motions to withdraw, filed by appellate public defenders in each of these district courts, based upon excessive case load have not been filed for many years[2]; and (3) counties in this district should not be required to use ad valorem tax dollars budgeted for local projects to fund private attorneys, clearly a function of state government under Article V of the Florida Constitution. While that response certainly has merit, this court is bound by supreme court order to provide meaningful appellate review for these indigent defendants. See In re Order on Prosecution of Criminal Appeals by the Tenth Judicial Circuit Public Defender, 561 So.2d 1130 (Fla.1990). If this order is not entered, delinquent public defender appeals will constitute twenty-five percent or more of the pending case load of this court by the end of 1998. Without this drastic step, this court has no hope of fulfilling its constitutional duty to provide meaningful review to the indigent criminal defendants filing appeals in this court.
At the current production levels of the appellate public defender, the individual counties will be required to shoulder this financial burden for approximately ten months. Hopefully, local attorneys will volunteer to act as appellate counsel as a service to their counties and The Florida Bar. The chief judges may also request that the public defenders in the Sixth, Twelfth, Thirteenth, and Twentieth Circuits volunteer to continue to represent their clients on appeal as a service to their clients and to the county. If the counties must shoulder this financial burden, the supreme court’s recent decision relieving the counties of the requirement to pay filing fees of $250 for every public defender appeal provides a source of funds which the counties can now utilize to help defray the expense of providing attorneys to these indigent criminal defendants. See Milligan v. Palm Beach County Bd. of County Comm’rs, 704 So.2d 1050 (Fla. 1998).
Obviously, this order would not be necessary if the appellate public defender’s office had kept reasonably current with its workload as the other four appellate public defenders in this state have consistently done.
Where litigants or attorneys have substantially interfered with the orderly process of judicial administration, courts may, and should, exercise their inherent authority to prevent abuse of the judicial system by, among other things, barring the offending party from filing further proceedings. See Attwood v. Singletary, 661 So.2d 1216 (Fla.1995); Huffman v. State, 693 So.2d 570 (Fla. 2d DCA 1997); Dennis v. State, 685 So.2d 1373 (Fla. 3d DCA 1996); Holmes v. State, 669 So.2d 360 (Fla. 5th DCA 1996); Isley v. State, 652 So.2d 409 (Fla. 5th DCA 1995); Birge v. State, 620 So.2d 234 (Fla. 1st DCA 1993). Where an attorney has, for whatever reasons, been forced to neglect the orderly and *4 timely processing of clients’ cases because of the attorney obligations to other clients, a conflict of interest is created which no court should long tolerate. Particularly this is true in cases involving clients who have been convicted of crimes and whose appeals are languishing because of their attorney’s inability to timely process their appeals. With no apparent alternative, we take the drastic steps set forth above in order to prevent more cases from becoming delinquent.
Because it is likely that either the Attorney General or the Public Defender may wish the supreme court to review this decision, and it clearly involves an issue of great public importance, we certify the following question to the supreme court:
WHEN A BACKLOG HAS EXISTED IN A PUBLIC DEFENDER’S OFFICE FOR MANY YEARS AND THAT BACKLOG HAS RESULTED IN SERIOUS DELAYS IN THE APPEALS OF ALMOST ALL DEFENDANTS REPRESENTED BY THE PUBLIC DEFENDER, IF REPEATED ORDERS REMOVING THE PUBLIC DEFENDER FROM VERY OLD CASES HAVE NOT SOLVED THE PROBLEM, MAY THE DISTRICT COURT REMOVE THE PUBLIC DEFENDER FROM HIS STATUTORY RESPONSIBILITIES FOR NEW CASES AND REQUIRE THE COUNTIES TO BEAR THE BURDEN OF PERFORMING THE PUBLIC DEFENDER’S DUTIES UNTIL THE BACKLOG IS RELIEVED?
This order shall be effective May 1, 1998, and remain in effect until further order of this court.
DANAHY, CAMPBELL, FRANK, THREADGILL, PATTERSON, ALTENBERND, BLUE, FULMER, QUINCE, WHATLEY, NORTHCUTT, and GREEN, JJ., concur.

. Although, due to separation of powers, the judiciary may not have the ability to review this problem in detail, the legislature presumably has the power to conduct hearings to determine the nature of the problem so that it may provide whatever resources are necessary to fulfill the state’s constitutional obligations to indigent defendants.

. This court has contacted the court clerk's office in each of the other district courts of appeal and has confirmed that for the last several years there have been no public defender motions to withdraw because of excessive case load.